IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SARA KHALIL,<br><br>Plaintiff,<br><br>vs.<br><br>THE CITY OF LINCOLN, a political subdivision; LERION GAYLOR-BAIRD, and TERESA EWINS,<br><br>Defendants. | **4:23CV3159**<br><br><br>**MEMORANDUM AND ORDER** |

Pending before the Court is Plaintiff's motion to compel the production, or in the alternative, for *in camera* review of two documents she contends are responsive to Plaintiff's Requests for Production Nos. 1, 14, and 35. Filing No. 116. Also pending before the Court is Defendants' motion for protective order which relates to the same documents. Filing No. 127. For the reasons set forth herein, the Court grants in part and denies in part Plaintiff's motion, Filing No. 116, and grants Defendants' motion, Filing No. 127, as set forth herein.

## BACKGROUND

On August 25, 2023, Plaintiff filed a complaint alleging employment discrimination relating to her work at the Lincoln Police Department ("LPD"). Filing No. 1. The documents relevant to the present discovery dispute are: (1) a May 11, 2021 email and associated attachments sent by Tonya Peters, city attorney for the City of Lincoln, to Interim Lincoln Police Chief Brian Jackson and (2) an October

1

7, 2021 email and associated attachments sent by paralegal Samantha Lowery to Lincoln Police Chief Teresa Ewins.

The requests for production at issue, and to which Plaintiff contends the emails are responsive, are set forth below:

Request No. 1: All documents that support each denial and affirmative defense raised in your Answer to Plaintiff's Complaint. This request excludes any communications between Defendant and retained counsel following the filing of this litigation or any communications between Defendant and retained counsel during the administrative process, which do not need to be identified on a privilege log.

Request No. 14: The Internal Investigation files involving the discipline and termination of Plaintiff during her employment.

Request No. 35: Emails, text messages or other electronically-stored information sent by or to Teresa Ewins regarding Plaintiff's discipline or termination from January 1, 2021 to July 21, 2023.

Filing No. 118-2.

The following facts are supported by the evidence submitted and are relevant to the pending motions.

On April 12, 2021, an internal affairs investigation involving Plaintiff was initiated to examine potential misconduct violations regarding *Miranda* warnings. Filing No. 118-12. Interim LPD Chief Jackson finalized Plaintiff's discipline in relation to this alleged misconduct on May 14, 2021. Filing No. 118-11. On May 11, 2021, prior to this finalization, Peters emailed Chief Jackson a document entitled "copy of discipline since 1/2010 with gender and police discipline 2001 to 4/2021" (the May 2021 email at issue). This email was entitled "RE: Khalil report ATTY-CLIENT PRIV WORK PRODUCT." Filing No. 129-7.

2

LPD Internal Affairs Sergeant Michelle Jochum was a part of Plaintiff's internal affairs investigation. In her report, Sergeant Jochum requested comparative disciplinary information in connection with her disciplinary investigation of Plaintiff. Filing No. 118-12 at 3; 37. Plaintiff contends Defendant did not produce this report. Filing No. 117 at 8. However, Defendant attests the comparable discipline report reviewed by Sergeant Jochum has been produced. Filing No. 129-1 at 2. Defendant provided this document to the Court. Filing No. 129-5.

Peters provides legal advice to the management of LPD in various employment matters and, further, represents and defends the City of Lincoln in appeals of discipline by LPD employees and other employment claims. Filing No. 129-2. When the discipline of LPD employees involves the potential for serious discipline, such as suspension, demotion, and/or termination, Peters provides legal advice to the Chief of Police, Acting Chief of Police, Assistant Chief, and/or Captain. *Id.* Peters provides legal advice: (1) to ensure the legality of any discipline and (2) in anticipation of an employee's appeal to either the City Personnel Board or the District Court for Lancaster County, Nebraska. Filing No. 129-2 at 2. Police officers can appeal any discipline resulting in discharge, suspension, or reduction in classification or pay to the City Personnel Board. After appealing to the City Personnel Board, an employee may appeal a decision to the District Court of Lancaster County, Nebraska. Filing No. 129-2 at 2.

Peters provided a declaration indicating that the May 2021 email was "sent in reference to the discipline of Plaintiff Sara Khalil following an investigation by LPD's Internal Affairs into Plaintiff Khalil failing to properly advise a suspect of his Miranda rights and then indicating on reports that the subject waived his Miranda rights." Filing No. 129-2. This email had two attachments. Peters indicates one attachment, with a bates number ending in 4289, is a spreadsheet created by LPD at her direction and for her use regarding the discipline of all LPD officers from

3

2010 to 2015. This spreadsheet contains the name of the officer, the discipline received, and a brief description of the incident. Filing No. 129-2 at 2. The second attachment, with a bates number ending in 4290, is a spreadsheet created by the City of Lincoln's Human Resources Department at Peters' direction and for Peters' use regarding all LPD disciplinary actions taken from 2001 to 2015, generally excluding discipline issued below a reprimand. Filing No. 129-2 at 3. The spreadsheet includes the discipline of commissioned police officers and non-commissioned staff, such as 911 dispatchers and contains the names of employees receiving discipline, the discipline received, and a description of the incident. Filing No. 129-2 at 3. Regarding the May 2021 email, Peters indicated that, at the time she sent the email, she was aware Plaintiff had filed a Charge of Discrimination with the EEOC regarding her employment with LPD and regarding discipline she had received at LPD. Filing No. 129-2 at 3. Peters was also aware Plaintiff was represented by legal counsel at the time. Filing No. 129-2 at 3. Peters indicated she was aware the legal counsel Plaintiff had retained (current counsel) also represented other individuals who had filed claims against LPD. Filing No. 129-2 at 5. Peters indicated that, at the time she sent the May 2021 email, she intended for the email and attachments to be confidential.

Also at issue in the present motion is the October 7, 2021, email from Lowery to Chief Ewins and Jackson which includes a document entitled "Comparable Discipline". Filing No. 118-4 at 20. This attachment referenced Plaintiff. Regarding the October 2021 email, at the time of the email Lowery worked as a paralegal for the City of Lincoln. Filing No. 129-2 at 3. The October 2021 email related to the discipline of an individual other than Plaintiff, namely a male officer in relation to the assault of a healthcare worker. Filing No. 129-2 at 4. Specifically, on October 5, 2021, Peters instructed Lowery to review prior discipline of LPD officers with similar years of experience as the officer at issue and for failing to investigate and make reports. Filing No. 129-2 at 4. Lowery created the attachment to the October

4

2021 email at Peters' direction. Peters indicates she instructed Lowery to make this spreadsheet for purposes of providing legal advice to ensure any discipline of the at-issue employee was defensible and, further, intended for Lowery's review to be confidential and to not be shared with anyone except Chief Ewins and Assistant Chief Jackson. Filing No. 129-2 at 5. According to Peters, Plaintiff is only referenced in the attachment. Filing No. 129-2 at 4.

Upon review of the briefing, the undersigned requested Defendant file the documents at issue under seal for purposes of an *in camera* review. Accordingly, the Court grants this portion of Plaintiff's motion to compel. *See* Filing No. 116. The undersigned has reviewed these documents for purposes of reaching the conclusions set forth herein.

## ANALYSIS

Plaintiff moves to compel Defendants to disclose the aforementioned documents. In her motion, Plaintiff argues the documents are not privileged because: (1) the attorney-client privilege does not extend to these communications because they were created in the ordinary course of business and not for purposes of litigation; (2) the work product doctrine does not protect routine business records; and (3) Defendant cannot use privilege as "both a sword and a shield." Filing No. 117 at 12. Plaintiff also argues these documents are relevant because they contain comparator information and that, regarding the October 2021 email, Defendant cannot invoke attorney-client privilege because a paralegal sent the email. Filing No. 117 at 8.

Defendants oppose Plaintiff's motion to compel and separately move for a protective order. Defendants argue the documents are not relevant,[1] are protected

---

[1] Defendant generally argues any comparator disciplinary information prior to 2019 is irrelevant and exceeds the permissible scope of discovery based on Plaintiff's testimony in litigation which she was not a party. Filing No. 126 at 22. The Court does not find

by attorney-client privilege, and constitute work product. Defendants further point out it has produced the comparator data related to Jochum's April 2021 investigation of Plaintiff.

## I.     Standards

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed R Civ. P. 26(c) addressees protective orders and, in relevant part, indicates "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following: "forbidding the disclosure or discovery"; and "prescribing a discovery method other than the one selected by the party seeking discovery."

To determine whether a matter is discoverable, the Court must first determine whether the discovery is relevant to a claim. Relevancy is to be broadly construed for discovery issues and, further, is "any matter that could bear on, or that reasonably could lead to [an]other matter that could bear on," any issue that is or may be in the case. *NuTone, Inc. v. Jakel, Inc.*, No. 8:07CV 305, 2009 WL 1974441, at *2 (D. Neb. July 6, 2009 ) (quoting citation omitted). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in this case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Once the requesting party makes a threshold showing of relevance, the burden shifts to the party resisting discovery to show their objections are valid. *Allstate Ins. Co. v. Hewlett-Packard Co.*, 8:08CV39, 2010 WL 2813659, at *2 (D. Neb. July 16, 2010).

---

Plaintiff's 2019 testimony particularly pertinent to a relevance determination and does not find it dispositive to the issues at hand.

Further, the attorney-client privilege "protects confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client." *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011). A communication between an attorney and his client is "prima facie committed for the sake of legal advice and [is], therefore, within the privilege absent a clear showing to the contrary." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 610 (8th Cir. 1978) (en banc). In order for attorney-client privilege to apply, "the parties to the communication in question must bear the relationship of attorney and client," and "the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity." *Id*. at 602. A party withholding documents based upon attorney-client privilege bears the burden of proving that privilege. *Id*. at 609.

The attorney-client privilege "extends only to *communications* and not to facts. . .The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Upjohn Co v. United States*, 449 U.S. 383, 395-96 (1981) (quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D. Pa. 1692). Further, the attorney-client privilege does not apply if the lawyer is not acting in his capacity as legal advisor, i.e., if a lawyer is acting as a business advisor. *United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012) (citations omitted).

The work product doctrine is set forth in Fed. R. Civ. P. 26(b)(3)(A) and states:

> A party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant,

surety, indemnitor, insurer, or agent). But . . . those materials may be discovered if:

(i)      they are otherwise discoverable under Rule 26(b)(1); and

(ii)     the party shows that it has substantial needs for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Documents prepared in the ordinary course of business are not protected by the work-product doctrine, however, the protection attaches once there is a reasonable prospect of litigation. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987). This is a factual determination. *Id.* "Where work product is intertwined between prospective litigation and non-litigation business purposes, the work product doctrine should properly attach." *Lumber v. PPG Indus. Inc.*, 168 F.R.D. 641, 645 (D.Minn. 1996) (*citing* Diversified Indus., Inc. 572 F.2d at 610).

There are two types of work product, ordinary work product, "which includes raw factual information" and opinion work product, "which encompasses counsel's mental impressions, conclusions, opinions or legal theories." *United States v. Milk*, 2020 WL 6255653 at *2 (D.S.D. Oct. 23, 2020) (citing *In re Green Grand Jury Proceedings*, 492 F.3d 976. 980 (8th Cir. 2007)) (internal quotations omitted). "Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). "[O]pinion work product enjoys almost absolute immunity and can be discovered in only very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." *Id.*

## II.    May 2021 Email and Attachments

Upon review, it appears Plaintiff contends the May 11, 2021 email and attachments are responsive to Request Nos. 1, 14, and 35. The Court analyzes

Defendants' asserted objections of attorney-client privilege and work product doctrine.

First, the evidence before the Court indicates that Peters was LPD's attorney. Moreover, Peters was consulted for the purpose of obtaining services within her capacity as a lawyer and not in some other capacity. Finally, the evidence indicates the email and attachment were intended to be confidential. Thus, based upon the information before the Court, and upon review of the documents in question, the Court finds Defendant has fulfilled its burden of showing the attorney-client privilege applies to the May 2021 email.

Though it is true LPD has a policy of performing investigations in relation to allegations of misconduct, the fact that LPD performs investigations in the normal course of business does not itself mean any communications regarding the investigation cannot be attorney-client privileged. Rather, as Peters attested, she regularly provides legal advice to LPD leadership to ensure the legality of discipline. Peters' email was to Acting Chief of Police Brian Jackson, who was reviewing Khalil's discipline as part of his duties, and was sent 3 days before Interim Chief Jackson finalized Plaintiff's discipline. Peters sent the email for the purpose of providing legal advice to ensure Khalil's discipline was defensible. Filing No. 129-2 at 3. Peters was also aware that Khalil, and her counsel, were involved with claims of discrimination regarding employment with LPD – presumably increasing the perceived need for legal advice prior to the discipline being finalized. Based on this information, Defendant fulfilled its burden of showing the attorney-client privilege applies to the May 2021 email. The May 2021 email was a confidential communication made by Peters, as an attorney, to her client, LPD, for purposes of rendering legal advice.

The Court next considers the application of the work product doctrine to the attachments.[2] The first attachment is a spreadsheet created by LPD at the direction of Peters for her use regarding the discipline of all LPD officers from 2010 to 2015. Filing No. 129-2 at 2. The second attachment was a spreadsheet created by the City of Lincoln's Human Resources Department at Peters' direction and for her use regarding all LPD disciplinary actions taken from 2001 to 2015. Filing No. 129-2 at 2-3.

Upon review of the documents, the Court finds these attachments constitute opinion work product. Both spreadsheets were created at the direction of an attorney and are the type of information that necessarily lend to counsel's mental impressions. Moreover, at the time Peters shared the attachments with her client, in what this court has already found to be an attorney-client protected correspondence, she was aware that Plaintiff had filed a Charge of Discrimination with the EEOC and that Khalil was represented by counsel relating to her employment with LPD. Filing No. 129-2. At that time, there was a reasonable prospect of litigation. *See Escamilla v. SMS Holdings Corp.*, 2011 WL 13243580 at *21 (D.Minn. June 28, 2011) (courts generally hold that internal investigations conducted by or at the direction of counsel in response to an EEOC charge constitute work product).

Moreover, facts gathered at the request of an attorney by a client can constitute work product. *See United States v. Johnson*, 378 F.Supp.2d 1041, 1045 (N.D.Iowa 2006) (citing *United States v. Nobles*, 422 U.S. 225, 238-39 (1975)) ("The Court has recognized, further, that the reality of litigation is that the work-

---

[2] There appears to be some disagreement amongst courts when considering attachments to protected emails—specifically whether the protection inherently applies to attachments based on the nature of an attorney-client protected email. *See Willis Elec. Co. v. Polygroup Trading Ltd.*, No. 15-CV-3443-WMW-KMM, 2021 WL 568454, at *6 (D. Minn. Feb. 16, 2021). Because the undersigned finds the work product doctrine applies to the attachments, it is unnecessary to dissect this doctrine.

10

product privilege must extend to 'material prepared by agents for the attorney as well as those prepared by the attorney himself.'"); *see also Regents of the Univ. of Minn. v. United States*, 340 F.R.D. 293, 304 (D.Minn. Oct. 29, 2021) (""Documents protected by the doctrine include 'trial preparation documents that contain the fruits of the attorney's investigative endeavors and any compendium of relevant evidence prepared by the attorney.'") (quoting *In re Murphy*, 560 F.2d. 326, 337 (8th Cir. 1977)).

At the very least, these spreadsheets constitute ordinary work product. But Plaintiff has not shown that she cannot obtain the same facts by other means. In fact, it appears Defendant has already produced the relevant comparator evidence. *See* Filing No. 129-5. Upon review of the parties' submissions, Plaintiff has not shown a substantial need for these spreadsheets. *Baker*, 209 F.3d at 1054 ("Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means.").

Plaintiff argues Defendants waived any privilege they may have in the May 2021 email and attachments by placing their disciplinary practices at issue as a primary defense and additionally asserting a good faith affirmative defense. However, as pointed out by Defendant, nearly identical issues were decided by this district in *Benson v. City of Lincoln*, 343 F.R.D. 595 (D. Neb. Mar. 1, 2023). As stated by the *Benson* court, Defendant's contention that it had a legitimate, nondiscriminatory and non-retaliatory reason for terminating the subject employment is not an affirmative defense, but merely a denial of the plaintiff's claim. *Benson*, 343 F.R.D. at 612; *see also Parada v. Great Plains Intern. of Sioux City, Inc*., 483 F. Supp. 2d 777, 809 (N.D. Iowa 2007). Defendant did not waive their privilege by asserting Plaintiff's claim has no merit.

With regard to Plaintiff's contention that Defendant's good faith affirmative defense waives the privilege, the *Benson* court also addressed the issue noting

11

that the content of the investigation or work product is immaterial to a good faith defense where inquiry is what the employer believed. *See* Benson, 343 F.R.D. at 614. There is no information before this Court that Defendant plans to use either of the attachments at issue to support any affirmative defense. Based upon the circumstances presented here, the work product privilege is not waived.

For the reasons set forth herein, the May 2021 email and attachments are privileged and do not need to be disclosed.

### III.    October 2021 Email and Attachments

As previously stated, the October 2021 email and attachment was sent by Samantha Lowery, a paralegal for the City Attorney's Office at the direction of Peters in relation to the discipline of another LPD employee. Filing No. 129-2 at 3-4. The attachment references Plaintiff. *Id.*

Assuming the documents are generally discoverable,[3] the October 2021 email and attachments are privileged pursuant to both the attorney-client privilege and work product doctrine. As set forth above, the attorney-client privilege applies to people who are working at an attorney's direction, i.e. a paralegal. *Stormo v. City of Sioux Falls*, 2015 WL 5098627 at *4 (D.S.D. Aug. 31, 2015). For the same reasons set forth in the May 2021 section, the Defendant has also fulfilled its burden of showing the email was sent for legal, rather than ordinary business purposes.[4] Evidence indicates Peters specifically instructed Lowery to make the

---

[3] The Court questions whether the October 2021 email is responsive to any of Plaintiff's requests, and, further, relevant to the claims at hand, considering this email was sent in relation to another employee who was being investigated for unrelated misconduct.

[4] The undersigned recognizes that, regarding the May 2021 email and attachments, Plaintiff had filed a Charge of Discrimination and retained counsel. Those facts do not apply to the October 2021 email and attachments. Nonetheless, the evidence indicates Peters provides legal advice to people like the Chief of Police when there is the potential

spreadsheet attachment for purposes of ensuring any discipline of the at-issue employee was defensible and could eventually withstand a court challenge. Similarly, and for the same reasons outlined for the May 2021 email, the attachments to the October 2021 email are protected, at the least, by the ordinary work product doctrine.[5] Moreover, Plaintiff has not shown substantial need or the disclosure of these documents, especially when Defendant has already provided the comparable discipline reports that are referenced in Jochim's April 2021 investigation. Filing Nos. 129-1, 129-5.

### IV.    Motion for Protective Order

As initially stated, the documents at issue in the Motion to Compel and Motion for Protective Order are identical. Because the Court finds the documents are protected under the attorney-client privilege and work product doctrine, there is good cause for a protective order regarding these documents.

Finally, Defendants requests the Court award it their fees and costs related to this motion and in responding to Plaintiff's Motion to Compel. The undersigned does not find this to be a situation in which fees and costs are warranted and, thus, denies the request.

Accordingly,

1. Plaintiff's motion to compel and for an *in camera* review, Filing No. 116, is granted in part and denied in part as set forth herein.

---

for serious discipline to ensure the legality of such discipline. Peters also provides legal advice in anticipation of an employee's appeal of a disciplinary decision.

[5] The work product doctrine extends to documents prepared in anticipation of unrelated or terminated litigation. *State v. United States*, No. 1:19-CV-150, 2022 WL 21456614, at *3 (D.N.D. July 8, 2022) citing *In re Murphy*, 560 F.2d 326, 334 (8th Cir. 1977) ("The work product privilege would be attenuated if it were limited to documents that were prepared in the case for which discovery is sought.").

2.  Defendants' motion for protective order, Filing No. 127, is granted in part and denied in part as set forth herein.

IT IS ORDERED.

Dated this 22nd day of July, 2026.

BY THE COURT:

*s/ Jacqueline M. DeLuca*

United States Magistrate Judge